May it please the court and counsel, this is a situation involving Mr. Smith who was driving through Twin Falls in May of 2001 and under the influence of a leucogenic drug, his behavior became somewhat out of control. He probably went to a television station and was carrying on. The police were called. The police came and subdued him and restrained him and took him to an emergency room in the hospital, Magic Valley Regional Medical Center. There he was examined physically and mentally by a DE, determined to be a danger to himself and others, and then was removed to a psychiatric hospital which I think is part of the Magic Valley Regional Medical Center. Is he walking around now? Yes, he is, as a matter of fact. Not the same as he was, but he is walking around. But in any case, he was, I think, restrained again. Officer Green was, his services were enlisted to transport him to the psychiatric hospital. He was taken there. They took the restraints off and I think it was Officer Green who made that decision to do that. He was turned over to a secretary for an evaluation. He began to wander around, got into an unlocked kitchen, got some butter knives and was wandering again around the area fairly well, out of control. Officer Green had been back talking with a friend who was notified to come out, came out. This was a large man, probably menacing looking and certainly out of control, and told to stop. He threw some butter knives at the officer. The officer fired and I think fired twice and finally got him. He went down and then was removed to the emergency ward of the hospital and subsequently went through several surgeries. His life was certainly at issue and he was transferred down, I think, to Salt Lake, I believe, and worked on there for, he was hospitalized for probably three months to my knowledge. We filed for a complaint on various grounds against the hospitals and against Officer Green and the city of Twin Falls. We alleged negligence, general negligence, res ipsa, strict liability, negligence per se, and also violation of the EMTALA, which is the Emergency Medical Treatment and Active Labor Act, a federal statute. The, both, all defendants filed for summary judgment. There was, we've gone through the situation of procedural error on my part as far as responding to the summary judgment. That was incorrectly violated a local rule and did not file our affidavits in briefs in time. And based on that, Judge Lodge, I believe, would not allow any further filings in defense of our position. So we basically had a verified complaint and that was it. I mean, Officer Green's affidavit. So the issues that I think are most important to discuss here is certainly the fact that the court decided that regardless of what procedural error was made, this was going to be decided on the merits and the information that was available to them then. And basically, the district court ruled on merits in favor of all defendants and indicated that all defendants are protected under the sovereign immunity exceptions of the Iowa Court Claims Act, specifically out of Code Section 6-904A. We read all, maybe we can get right to the heart of this. What, where did the judge make an error in any of his rulings? Well, if he ruled under 6-904A and said there was sovereign immunity in this case, the fact is that under Harris v. State Department of Health and Welfare, that case indicates that that particular statute only gives immunity of any kind of sovereign immunity to third persons. It doesn't involve a situation of somebody or an agent working at the hospital where a patient is injured, such as in this case. And who is that person in the hospital that you're talking about? I'm talking about... And what did they do? Officer Green. Well, Officer Green wasn't employed by the hospital. Well, Officer Green nevertheless became an agent of the hospital when he agreed to accept transferring him and making the decision. Where do we... Go ahead. Let me just start with Officer Green. It's, you know, first I had to sort out all the claims, then I had to get all the defendants separate. I thought even apart from all these other statutes, isn't there a bond requirement for filing a case against a police officer, which was never done here, which would mean Officer Green is kind of out? Well, it's our position Officer Green was not acting at that time as a police officer. He was enlisted to... Was he a doctor or a private citizen? He became a transporter, an agent of the hospital and transporting. Under MTAL, anybody who transfers from one facility to another must meet certain qualifications. And quite frankly, they probably should have been done with an ambulance, with trained personnel who know how to deal with people who are deranged, people in his particular situation. You know, I thought about that. Police officers do that all the time. They transport people. But nothing happened. I mean, none of the bad stuff that you're complaining about happened in connection with the transport. He went from Hospital A to Hospital B, which was more qualified to deal with his situation. And in that, from getting from A to B, nothing bad happened. Well, there were no papers. No papers at all. And that's a very... No what now? No records. Okay. What does that mean? It means that there was nothing that would tell the other people in the other facility. So let's go back to that. Even if you didn't have to allege a specific violation of, however you say this, EMTALA, in your administrative complaint, did that complaint make an allegation that there were no records? In my tort claim? Yes. I can't recall about it. I couldn't find it, but... I suppose there's the other problem, of course, when the restraints were removed. And he made that decision to do that. And that is an Officer Green's affidavit. Right. But then they turned him over to the hospital, right? They turned him over to the secretary, who was... Well, I mean, that may be the hospital. We can ask them about that. But we're talking to Officer Green right now. He turns... You can't mix and match this stuff. You've got to take each one down all the statutes. So he turns this person over to the hospital. And he's done transporting. Well, but he made the decision to remove the restraints. And I don't think that he could make that decision. I found that. I'd have to get your complaint out. But I think your point is that Officer Green, now having him in custody and transporting him in cuffs, should have followed him around the hospital with the cuffs on until something. What was alleged in your complaint that was factually about that? Well, what I said was he turned him over to personnel that was not qualified to either make the decision to remove the restraints or was in any way qualified to make any decisions about this deranged man. Simply a secretary taking information, and he's sitting on a chair with no restraints. But that's not... He transported to the hospital. Is that a hospital problem? Could be, very much. I believe that the hospital... Provide your proper person to do that. That's great. I mean, that's something you might allege against hospital. But he was told to transport to a hospital. Now, whether they had a secretary, I don't know what's alleged in your complaint or what the facts are before the judge about who received him. But he did his job. Then what the hospital did is something else. Now, how he got loose or where they put him, was he in a cell, was he in a bed? We don't know all. He ended up with two knives. That seems to be a hospital doing that, not Officer Green. Well, I think that Officer Green has some responsibility with who he turns the person over to. Well, you may think so, but what is the basis of that factually and legally? The normal psychiatric hospital procedures are that only a person qualified, that is, a doctor, can make that decision. Now, is that in your complaint? Remember, we're stuck with what you said. I know that. That's what we're trying to... Yeah. It's in the normal procedures of the hospital that I did, I included, of course, and whether those are in evidence or not because of the ruling on the... Well, no, if they're not in evidence, we don't consider them. Right. So, I mean, you're saying he was negligent, really, in turning him over to this unqualified person. Right. But then the negligence issue gets you back to Officer Green's bond liability and those other administrative requirements in the State of Idaho. That's why I believe that EMTAL, under the Supremacy Clause, takes precedent over all... It doesn't apply. That statute doesn't apply. You're not suing under that statute. You're suing under the State law, and you can't get any... unless you allege a cause of action under that statute. Are you talking about the Federal statute? Well, I think we did allege that in the complaint, the EMTAL. You alleged it in the complaint, not the administrative tort complaint. Correct. You mean the tort claim? The tort claim. Well, the tort claim, we allege facts and circumstances which would amount to a violation of EMTAL. How does that statute apply? First of all, it's a dumping statute. This wasn't a dump. All we did was brought him over there. So how does that Federal statute even apply? Well, I think I looked at it as, as a matter of fact, they were transferring from one facility to another facility. In doing that, it is, at least I consider it to be... Well, I think the statute says they don't want people abandoned. He was accepted. It's an abandonment statute. Well, they also want people, if they are dumped, to have the proper information between the two facilities. So one facility doesn't. I know nothing about this guy, which is exactly what happened in this case. It was a phone call. That was it. And so they're getting somebody they have no information about. The officer in charge, he orders the restraints taken off, when only a doctor should have been able to do that under the policies and procedures of the psychiatric hospital. Of course, we're not able to file any more affidavits or briefs because of the procedural error. And, of course, I've dealt with that or argued about that under Martinez. I think Martinez indicates that somebody's judgment should not enter because somebody violates a local rule. And if Judge Lodge indicated, yeah, you did that, but we're not going to let you file any more affidavits or any more briefs, then you're pretty well out of luck, I think. I have a circular argument. Okay. As I say, I feel that Amtala does supersede. I think it's applicable here. Once he was declared to be in an emergency medical condition, which was done, once that happens, all the hats change. Everybody becomes something else. And certainly Officer Green, I think under those circumstances, became an agent because he endeavored to transport him. He did that incorrectly. He's not trained to do that. And he made some decisions that eventually led to the catastrophe, quite frankly. I've already discussed Martinez. I think those are the important issues I wanted to cover initially. Thank you. Thank you. You may proceed. Good morning. May it please the Court, Counsel, my name is Jennifer Kalfberzee, and I represent the following defendants. I'm going to try to help the Court break this up. I'm going to call these defendants the hospital defendants. I represent Magic Valley Regional Medical Center, the hospital. I represent Canyon View, a department of the hospital which has been individually named, which is Canyon View Psychiatric and Addiction Services of Magic Valley Regional Medical Center. And we'll get into this a little further, but I want to make clear for the Court that that is a department of the hospital. There is only one hospital involved in this scenario. That's part of Magic? Yes, and that would be found in the record in the affidavit of Sharon Fisher. Are we talking about just while we're there, is it all one building or what? It's not. There are two different campuses. Canyon View used to be a private facility. The county hospital acquired that. They're about maybe a block and a half, two blocks. Well, he just puts the handcuffs on over at the emergency area, and then he just gets them over to the other facility and then turns them loose there. Doesn't turn them loose. Well, I'm sorry. He turns them over to a secretary, according to what Counsel says. Well, and since we're there, let me go there. Let me tell the Court, though, before I go too far down this path, I also represent Gene Svork, an individual employee of the hospital, as well as the county of Twin Falls, the owner of the facility. He was a friend of Officer Green, right? An acquaintance, apparently, yes. Okay. I'm splitting my 20 minutes' time with Mr. Hall, who represents Officer Green and the city of Twin Falls, so I only have 10 minutes. So I will try to watch my clock. You might need less time. I was hoping it was going to be the other way around. Well, go ahead. Let me go back to some of the issues raised by Judge Brunetti. And I had, with all due respect, had corrected the statement that this person, David Smith, the plaintiff, was turned loose. I didn't mean it that way. I'm sorry. I apologize. It wasn't turned loose. The fact is, what he did, though, is he went from, as I understand it, from the first facility, the hospital, and they did an evaluation, said he should go to the mental side, wherever that was, in handcuffs, brought him, and turned it over to some person. He just didn't, and he didn't turn him loose. And we're being told that he was turned over to a secretary who was a person that was not responsible. So maybe you can clear that up. Okay. And let me clarify that. First of all, let me take one step backwards and tell the Court that down below, on our summary judgment ruling, or on the summary judgment process, what the Court had in front of it, of course, was all of our briefing. We have no facts in the record submitted by a plaintiff other than the verified complaint. Except the verified complaint. Other than the verified complaint. And we've addressed that, and I'm going to get to the underlying question. We've addressed that in our briefing. If you look at the factual, what I'm going to call the potential factual statements in the verified complaint, the complaint was verified by David Smith. This is an individual who has admitted that during this time period he was psychotic. And we have replete in the record in the designated examiner's report the fact that he was psychotic. So we have argued and we contend that the information contained in the verified complaint relative to what actually happened cannot be considered by the Court. Under the case law we've cited to the Court, it has to be evidence that is admissible into the record. It has to be based on an individual's personal knowledge. It has to be. That's his personal reality. It might later go to the weight of it, but I'm not too impressed with that argument. It seems to me we have to take it at summary judgment as given. Okay. You're basically wanting us to make a, the district court to make some kind of factual weighing and to throw it out because of his mental condition when there's not really a, you can't do that on summary judgment. And procedurally this is difficult because the verified complaint issue did not come up until the appellate level. So certainly it's not something that was briefed down below. Well, but the district judge said he considered the entire record. Correct. Unless you think the judge can throw out the verified complaint or he uses that word loosely, I take it that he looked at the whole file, including the verified complaint. If you want to stop here, you're going to miss your main points. Okay. And I think, you know, he was trying to be fair given the procedural issues. So we kind of have the whole thing in front of us. He said, I'm going to still consider the merits despite the procedural, you know, snafu that occurred down below. Correct. Which counters with Plaintiff's counsel's argument regarding Martinez on his appellate briefing. He argued that. Okay. Let me just get you to what's bothering me. Okay. And you can explain this. I looked through all these claims. I have some questions about the EMTALA because it's not, you know, it would be applicable if by its terms it's applicable. My question is, is it applicable to what I'll call an intra-hospital transfer? It is our position that it is not applicable to this set of circumstances where you have basically, and I believe that's accurate, calling it an intra-hospital transfer. And we've cited the court to the Bryant v. Adventist Health System case, which specifically says once the hospital is, quote, unquote, admitted, then EMTALA is gone. The purpose of the EMTALA statute is to prevent what the court has talked about with Mr. Fuller, patient dumping. This patient was not dumped. This patient was deemed to have a set of symptoms that needed care and treatment, and he was admitted to the hospital to the psychiatric behavioral unit. As I understand it, and let's keep with the facts of the case as presented to the judge, once he's found and brought in, they have to find out what's wrong with this fellow. He's out there wandering around. Correct. The police officer for the safety of everybody brings him in. They make a medical evaluation at the first level at the hospital. Correct. And they say the way we want to treat this person is to bring him over to our mental unit. So the transfer was just to give him adequate treatment as diagnosed the first time around when he was brought to hospital. Is that what the facts show? Correct. There's one more piece to it. The emergency room physician calls in the designated examiner, which is a Department of Health and Welfare individual, who actually makes the, and I'm not sure because that's not a physician per se, if it's a diagnosis, but comes to the hospital and suffers from some mental illness. Well, call it triage, call it whatever you want. They made a determination that their hospital unit had to send him over to the proper unit to be treated for what apparently was going on. And he's admitted at that point. Correct. Okay. So if that's the case, and even if the EMTLA didn't apply because he's already been admitted so he can't be, quote, transferred to another hospital, then what about a factual issue with respect to negligence? I mean, if he's admitted to the hospital and then they have a police officer, not an orderly or whoever else normally you see around hospitals, a police officer does the transfer to the other facility. Why wouldn't that, why isn't there a potential factual issue as to negligence on that? Okay. Again, let me take a step back. At the summary judgment level, the negligence causes of action, I mean, that really wasn't ferreted out per se, because our argument on those types of state law claims was that the hospital is entitled to immunity pursuant to the Idaho Tort Claims Act and Idaho Code 66341 dealing with committed individuals. Even so, this bothers me because he was asked to transport. He did transport. Nothing happened in the transport. He could have been sent over in a wheelbarrow. It really doesn't matter. He got there and he deposited the person where it was supposed to be deposited and it's over. So even if he was negligent or whatever, there's no evidence that he was. The person got to where they were supposed to go. Now, if he had delivered him, as I said earlier, turned him loose, there'd be something else. But he brought him to an official responsible for accepting the person just as instructed. Is that what the record shows? That is correct. Okay. But that says to Officer Green. Correct. I'm talking about the hospital. I'm talking about whether the hospital breached a duty once they admitted him to the hospital to release him to a police officer, having admitted him, determined that he was psychotic and had all these problems, whether they breached a duty in letting the officer decide, you know, where to take him. And let me go back to plaintiff's verified complaint, because I'm running out of time and I don't have time to go back and review and find the exact location. I don't know that that was alleged in plaintiff's complaint. All right. We'll take a look at that. And also, I don't know that that, per se, led to any damages. Again, I think Judge Brunetti, as Judge Brunetti has pointed out, nothing happened during the transport. I'm off of the transport. You're not hearing my question. I know he was, you know, you've explained that. I'm off of when he gets there. He's now turned over to a person. And when Judge Brunetti said he was, you know, let loose or whatever the word, you said, no, no, that's not true. That's going to come back to haunt you. What are the facts in the record once he gets to the other unit? The only facts that we have, well, and I am out of time, but let me finish with all due respect to Mr. Hall. I'm going to take up a couple seconds of his time. We'll restore them to him. Okay. Let me go at it this way. If you look at Gene Zvorek's affidavit, he has stated in there that at all times the standard of care in treating these types of patients was met. And that's a standard summary judgment affidavit in, quote-unquote, medical malpractice cases. I think if you're looking at negligence in the terms, in the context of Mr. Smith arriving at this department of the hospital and being cared and treated for, I think that would show there's no genuine issue of material fact. And there was nothing to counter that. One of the immunity statutes or certain standards that they adhere to, they're immune anyway. Correct. And again, if you look back at the affidavit. The whole hospital entity is a governmental entity? It is. That is correct. So they would come under 6904 in the mental health. And the 66341, correct. And just as a final closing note, if you look at those statutes and all the different standards, the gross negligence, the willful and wanton conduct, again, if you go back to Gene Zvorek's affidavit, which clearly states there was no basic negligence, then certainly that also indicates that there was nothing above that basic negligence. Thank you very much. Thank you. I'm pleased to be court and counsel. My name is Blake Hall. And as indicated, I represent Officer Green as well as the City of Twin Falls. In this complaint, there were five counts alleged. And I will try to go through those very briefly. Count one was a count of negligence against Officer Green. And as this court has correctly, as Judge Lodge correctly pointed out, and I think this court has recognized, in order for a state claim of negligence to proceed against a police officer, the first thing you have to do is you have to file an undertaking, 6-610. That's a condition preceding to filing your lawsuit. Plaintiff's counsel has not addressed that issue, has not even challenged on appeal that Judge Lodge was incorrect in some fashion in the application of 6-610. It says before any civil action may be filed. So why wouldn't the entire action fall out for failure to file the bond? There has been some case law at least held in the State of Idaho that the federal claims, civil rights violations. Yeah, the EMTLA. Would not have a requirement that the undertaking requirement only applies to state law claims. And so we would make the argument that certainly count one, count two, and count three in this case. Excuse me, count two is the Entala count, and that really doesn't apply, we don't think, but I'll get to that in just a moment. Count three and count four, those three counts, one, three, and four, are all state law claims. And the first thing you have to look at is whether or not he can proceed having not filed his undertaking. Judge Lodge correctly held that he could not. Also, Judge Lodge correctly held that Officer Green had immunity under Idaho Code 66-326 and 66-341 for the purposes of picking up this individual who was psychotic and transporting him, and also under 6-904. Interestingly, 904A, excuse me, we would suggest to the Court that the Plaintiffs' Counsel really hasn't perfected any type of an appeal with regard to these negligence claims because he really hasn't even attacked the basis for which the judge rendered his decision. He may have attacked one element of the basis, but not each of the alternative basis for which the judge rendered his decision with regard to those three counts. Count two, I simply would suggest to this Court, does not apply to Officer Green nor the city of Twin Falls. That's the, and I probably don't pronounce it right, the acronym, the Entala claim. But as Judge Lodge correctly found, Entala is a federal statute that was intended to prevent dumping of patients. And as my co-counsel has indicated, Entala, or the hospital's attorney has indicated, Entala doesn't apply once the person is admitted. And so what Officer Green did in this case is exactly what we would want and expect, and it was his duty to do and perform as a peace officer, is that they find an individual who is psychotic, who has problems. His duty is to, pursuant to 66-341, picks him up and transfers him to the hospital. The hospital then makes the determination that he should be admitted. He is admitted. They ask him if he would mind transferring him over to the facility that's a block or two away. He didn't take him over there and just drop him off. He took him over and delivered him precisely where he was told to deliver the individual. He delivered the individual, Mr. Green, there. He then removes his handcuffs and leaves the individual as an admitted patient in the custody of the hospital. And then on his way out, he sees a friend, an acquaintance of his. He stops and chats with him for a few minutes, and then the incident occurs wherein the injury to Mr. Green occurs. Could you just go back and tell me where Judge Lodge ruled on the EMTALA? Yes, I'd be happy to. I'm looking at his order of April 15th, which dealt with the city and the officer. It's page 5 of his order on excerpts, page 54, wherein the judge discusses the EMTALA and indicates that EMTALA applies to physicians and hospitals. It does not apply to police officers nor the city that employed such officers. And it's the middle paragraph on that page. That's a different order. Excuse me, I've got an order dated, what's the date of that order? That's your October 27 order I guess you're looking at. Yes. That's right. And what page is that order? That order is on page 5 of his order. It's on page 54 of the excerpts. And that is the order wherein he granted summary judgment to the city of Twin Falls and to Officer Green. Actually, as I read that and read the law, actually what happened here, rather than not get care, he got care. When he was getting care, then you might want to try to bring in negligence or whatever, but it was under the state claims that what happened. It wasn't the fact that he didn't get care. It's what happened when he got the care. Well, in fact, that really takes us into the last count, which is the 1983 claim by Plaintiffs' Counsel that somehow there was some deliberate indifference by Officer Green towards Mr. Smith. And Judge Lotz held quite to the contrary. He said there's no showing of deliberate indifference here. In fact, quite the contrary. The officer was acquainted, confronted with this individual, recognized that he needed to be transported to a hospital. He was transferred to a hospital, and the officer did everything he possibly could to help assist this individual to get treatment. And that is exactly what Judge Lotz held in this decision, is that if you're concerned about an Eighth Amendment violation of deliberate indifference by a police officer towards someone in his custody, nothing could be further from the truth in this case because he did all he could to try to assist this individual to get appropriate medical care. It seems to me that your argument, and after reading the briefs and all, that as far as the city and Officer Green were concerned, and let's eliminate the shooting at this point, that everything was done within what normally anybody would do, and Officer Green not only obeying the law and getting him off the street, but got him to the facility, and then, according to the facility, got him to the proper place. At that point, until you get to the shooting, everything's all over. What happened after that may be a hospital issue, unless you go to the shooting. And the shooting's not the issue here. I would agree with the Court. Okay. That then takes us to the last issue, I suppose, which is whether or not the last claim of the 1983 claim with regard to excessive force, if you find that there is an allegation and it is less than clear in reviewing the pleadings whether or not there is such an allegation in the complaint. But if one reaches that conclusion, then Judge Lodge says, well, let's look at whether or not Officer Green acted objectively reasonable under the circumstances. And he said and concluded, and I think this is important, and I hope you grant me just a moment to go through this. There is no dispute of fact in this case. This is a case that clearly was appropriate for summary judgment. Everyone agrees exactly what happened. And what happened was is that there's a commotion outside. Officer Green goes out to see what the problem is, and this individual who plaintiff's counsel has admitted is psychotic, is large, and who's out of control is wielding two knives, and he's threatening people. And the officer said, put down the knives. And the individual refused to, and he tried to approach one individual, and he said, put down the knives. And at that point, he starts towards the officer with these knives. And the question is, what would be due in 20-20 hindsight, but what is reasonably done under the facts and circumstances that the officer confronted at that very moment? And under the facts and circumstances at that moment, the officer didn't tell him to put down his knives just once, but he effectively did it three different times. And it wasn't until he approached the officer and was within three feet of the officer that the officer finally shot. Now, the officer knew that he had a circumstance that he had to deal with, and he acted in objectively reasonable fashion. That's clear from the record. That's clear from the decision of Judge Lodge. And we would submit to the Court as such that Judge Lodge's decision is appropriate in this case. And even Judge Lodge therefore never even had to get to the final issue of whether or not the officer would be entitled to qualified immunity, even if he had somehow not acted reasonably objective under the circumstances. We would submit to you that even if this Court were to reach a different conclusion than Judge Lodge, which we would encourage you not to do, that Officer Green would still be entitled to qualified immunity in this case because clearly qualified immunity would apply because the officer was confronted with a situation and there certainly is no clearly defined constitutional right not to be subjected to deadly force if you approach an individual with two knives. And as such, we believe that this case was timely and properly decided by Judge Lodge and encourage you to sustain his opinion. Thank you. Thank you. Mr. Fuller. Just a few things, Your Honors. First, if people are transferred even between wards in a hospital without the proper information, bad things happen. And I don't want to have a law by Fuller, but I believe in my research indeed there are cases which indicate that whether they're admitted or not, transferring somebody between departments if information is not passed with them, that prevents this kind of thing that that is some form of negligence. Now whether that comes under MDALA or just general negligence, I don't know. Patients aren't supposed to be shot. It's just that simple. Once there was a determination made that this man was deranged, that he was a danger to himself and others, he's not responsible. But somebody had to be negligent because people aren't shot in hospitals. So somebody was negligent. And I admit in this particular case, it's not the shooting that I'm talking about. I never did allege that. But the issue really is who created the situation that resulted in the shooting, whether it was Officer Green, whether it was a hospital, whether it was the psychiatry unit, whether it was a nurse, whoever it was. The point is that we never got to that, never have gotten to that, but that is a very important question that we need to get to. Part of the reason was in that particular, was to those particular defendants, that is the two hospitals, I guess one hospital is what we're talking about. We were never allowed really to file any affidavits or briefs because of the. One of the problems is that it happened in Idaho, which has this amazing web of statutes of. Well, we got rid of sovereign immunity back in, I think, 88. We don't have to show gross negligence. And Judge Lodge continually said that under 904, subsection A2, he said there had to be gross negligence. There doesn't have to be gross negligence. That's simply not the case. Normal negligence is all we need under the TURP claims of part of our statutes. That happened, I think, the first case came down in 88. The statute was passed then. I can't remember exactly. How does that tie in with the immunity statutes? Yeah. And that's, you know, that's what we've got here. We don't have sovereign immunity. We haven't had sovereign immunity. We haven't in the one case under 904. I was talking about. Clean it. Maybe I'm lost here. The immunity of the hospital for their actions in dealing with the situation. There's no immunity there, you're saying, under the Idaho statutes? Well, I, of course, the hospital, let me talk about MTAL. It's a strict liability statute. And once you're, you know. We're back to MTAL. I was actually referring to the Idaho. I see. Exemptions, but not the Federal statute. I think 904A takes precedence over the other statutes that refer to hospital immunity. And the 904A did do away with sovereign immunity to governmental entities. Period. And that includes hospitals. So we don't have to show the gross negligence. That's my understanding of the law. And that's all I have at this time. Thank you. Thank all counsel for your arguments. The case of Smith v. Magic Valley Regional Medical Center is submitted and we're adjourned for this morning. Thank you.
judges: Brunetti, McKeown, King